Thank you, Your Honor. Robert Christopher Reed on behalf of Appellant Maria Loyo-Morales on the Loyo-Morales case. I would ask to reserve three minutes, please. This is an unusual case, Your Honor, in that we have a district court decision where the district court says jurisdiction doesn't matter. Service of process doesn't matter. It didn't matter whether or not the appellant ever got served in this case because it was a fait accompli. And I will represent to this court and that this court's decisions over the years are clear. Service of process is tantamount to jurisdiction and without jurisdiction the district court can do nothing. The facts in this case are relatively simple and straightforward. Like the predecessor case, this is an HOA lien foreclosure case. The difference is there's a bankruptcy element to this. Prior owner Kimberly Taboney buys the property as a member of the Northgate HOA, subject to the Northgate CC&Rs. Northgate starts an HOA foreclosure proceeding. Ms. Taboney files bankruptcy. Ms. Taboney gets a discharge from the United States in August of 2010. After that, the HOA rescinds all their notices and starts over again. They do a new notice of default, they do a new notice of lien, and they proceed with the sale without any issues. On November of 2012, Ms. Loyal-Morales purchases the property at a duly noticed HOA sale. I don't think there's any question here that the sale was is whether or not that was ultimately a void sale due to the bankruptcy. But Ms. Loyal-Morales buys the property, has no issues with the property, rents out the property, never moves into the property. There is no evidence before this court that Ms. Loyal-Morales ever lived in this property prior to 2020. Alright, so the district judge seemed to, if not question Ms. Loyal-Morales' credibility, at least take issue with her statements because there appeared to be inconsistent statements. The bankruptcy petition listed the property as her residence in January 2020, but she filed a declaration saying she moved into the property in March 2021. I recognize that both of these dates are after the time of the purported service and the default judgment. But given those contradictions, was it fair for the district court to conclude that Ms. Loyal-Morales' testimony about her move-in date was not accurate and that she, in fact, did reside there or that was her residence in 2017, 2018? That's an excellent question, Your Honor. It's from 2016 to a bankruptcy petition in January. So what we're looking for on that question is, is there any countervailing evidence that she did actually reside there? Was this actually her dwelling or place of abode in 2016? The record is devoid of any evidence. There's zero evidence in the record that she resided there then. She provided a driver's license. She provided her affidavit. And the affidavit of service in this case confirms that the service was made on a tenant. And in fact, the district court says, refers to the person upon whom service was made, the Sabrina Zorales, as a tenant. She says it was her longtime tenant. And so when you look at the progeny that the district court cited in Huang and down below, they all talk about you can have multiple residences, but you have to have some evidence that the defendant actually resided there, ever resided there. Did any residing there? Did they have their mail there? Did they have their driver's license there? And in fact, the district courts in this jurisdiction, interpreting Huang, have all talked about this is a highly fact-intensive inquiry that requires evidence that the defendant actually resided there at the time of service. So I concede to the court that there's a declaration that says she moved in in 2021 and there's a bankruptcy petition that says she declared it as her residence in 2020. What there isn't is any evidence that she resided there in 2016. And in fact, all of the evidence the district court had shows that she did not reside there in 2016. And in fact, the district court seems to concede on page eight of its decision that it says, well, I find that she was properly served, but even if she wasn't, it doesn't matter. Even the district court seems to concede there's really a question of, I don't have anything to show that Ms. Loyal-Morales actually resided there. And the appellee did not provide any evidence that said she actually resided there. And as this Court knows from the record, the service of process in 2016 is highly suspect because the bank claims they served both Ms. Loyal-Morales and Ms. Toboney, the prior owner, at the same residence at the same time. They knew they didn't both reside there, even if they thought Ms. Loyal-Morales resided there. This was terrible service. And contrary to what the district court tells you that service doesn't matter, it always matters. Because under 60, and this is one of the mistakes that the district court made. The district court evaluated a 60B4 motion for jurisdiction and cited this court to, or cited three decisions under 60B1. They didn't even use the right standard. So your opening brief focuses on whether service was proper under state law and mentions the federal rule in passing, but the argument isn't developed. Typically that's not sufficient to raise an argument before us. Why should we not consider your argument about service under the federal rule to be waived? Well, Your Honor, it would be an issue if Nevada service and the Nevada standard and Rule 60, or I'm sorry, Rule 4E were not identical. It's identical. The argument is the same. And the issue is they both define it as service upon their dwelling or usual place of abode. It's the exact same standard. It's the exact same language. And so whether you evaluate it under Rule 4 or you evaluate it under the Nevada standard for service, the standard's the same. There's, what we're looking for is, is there some evidence in the record that shows us that this was actually Ms. Loyal-Morales's at the time of service. And in fact, that Hwang decision talks about, we need convincing evidence that she actually lived there. It relies upon national development versus triad holding out of the Second Circuit. That says what we're looking for- If I may interrupt you here, I take it it's not in the record, but when did Ms. Loyal-Morales have actual notice of this complaint to quiet the title? So there is a dispute. Ms. Loyal-Morales says she learned about it in 2021 when there was a foreclosure sale pending. She gets a notice of foreclosure sale. She had moved into the residence by then. The Appellees assert, no, no, she learned about it in 2020 and that that was the impetus for her bankruptcy. There's a question of that. What there's no question about is there's no evidence she had any notice prior to 2020. If you accept the Appellee's argument and Ms. Loyal-Morales's argument is, as soon as I learned about it, I moved. I moved the district court. I moved for an injunction and I moved to set it aside. And I said, there's never been any service. I didn't have actual notice. And that's a great question, Your Honor, because what the cases talk about is perhaps a different standard where service is lacking, but you have actual notice. There's no evidence of actual notice in this case during the pendency of it. And that goes to the timeliness of moving to set aside the default judgment. She moved as soon as she knew, as soon as she had the chance. What there's no evidence of is that she should have moved back in 2016, 2017, 2018. Did she, is there any credence to the argument that she waived the service requirements by appearing to seek injunctive relief? And Your Honor, I know that argument has been made by the Appellee. If you accept that argument that she waives service, she waives it at the time that she appears. She doesn't waive it before then. She doesn't retroactively waive service and say, by appearing and seeking relief and seeking to set aside the judgment, because, of course, that's the only thing she can do. So if the court were to rule she has waived it now, she's in the case, we set aside the default judgment, the case proceeds, we would concede that. But to say that she waived it in 2016 by making an appearance in 2021, I think is contrary to the rule and contrary to the law. So under that, where the court has no evidence of this ever being her residence, none, it's clearly erroneous to say, well, it doesn't matter that she didn't really get served. It doesn't matter that I have no evidence she lived there. It doesn't matter that they admit they served the tenant and then later told the District Court, oh, we personally served her. There's no evidence in the record that she resided there in 2016. And for that reason, the District Court lacked jurisdiction. And I think that's the key point. The District Court says, it doesn't matter if I lack jurisdiction, because this is a fait accompli and she would have failed anyway. And while we dispute that, obviously, jurisdiction is primary and essential in order for the District Court to be able to do anything. Once the District Court realized it didn't have jurisdiction, it should have stopped there. It can't go on and say, well, but I'm going to enter a ruling anyway. It doesn't make sense. And for that reason, the judgment is void on its face. There are enough, there's no evidence showing that she lived there. There's sufficient evidence to show she did not live there. She had another residence. And I just want to address, the District Court talked about multiple residence cases. And the cases they cite are people that actually maintained two different houses, one in Taiwan, one in Beverly Hills in the Huang case. In the National Development case was the Adnan Khashoggi case, where he had 20 residences around the country. And he said, I only spent 34 days at the residence in question at the time I was served. This is one where there's no evidence she ever lived there at the time. And so if we're going to set the standard, the standard has to be you have to have at least enough evidence to meet that significant evidence of permanency to say service is good. And in this case, there's no evidence. Moving on, likewise, the District Court said, well, I make a finding, the sale would have been void anyway, because the debtor was still in bankruptcy. As we've argued in our brief, debtor was out of bankruptcy. Debtor had already gotten her discharge. The stay had lifted. And at the District Court level, we made a statute of limitations argument. The District Court ignored the statute of limitations. Didn't even address the statute of limitations. Completely passed on it. You have nothing in front of you to even be able to review, because the District Court ignored it. It's uncontroverted, but that the stay had lifted as demise to bony before the HOA recommenced the foreclosure proceedings by starting over. So to that end, the District Court erroneously said, oh, by the way, we find that the sale was, I find per se void. There's no evidence in the record for this court to even be able to review that the sale was per se void. I mean, that's an issue we could go back. We certainly could brief it to the court. But on that basis and that basis alone, I think there's sufficient evidence and there's sufficient argument in front of this court that the District Court just got it wrong. They just got it wrong. She didn't apply 60 before. She didn't look for jurisdiction. And the District Court erroneously held, well, it doesn't matter if she got served. With that, Your Honor, unless you have any additional questions, I'll reserve the remainder of my time and I thank you. Thank you, Mr. Reid. Mr. Latchman. May it please the Court. My name is Scott Latchman and I represent the Bank of New York Mellon. This is another Nevada HOA quiet title matter. The HOA sale purchaser, Maria Loyal Morales, is not a serial investor like SFR or Sataquipay. Rather, she's a regular individual who purchased the subject property where she now resides and has been the titleholder of this property since 2012 after purchasing it for a mere $6,000. What better place to serve a nonprofessional with a quiet title complaint than at the subject property? This is exactly what the prior loan servicer detected when it sued Loyal Morales for quiet title in October 2016. It served Loyal Morales at the subject property through her then long-term tenant, Sabrina Zarellas. Are you suggesting that service on a tenant satisfies Rule 4's requirement that you serve at the person's usual residence or abode? Correct, Your Honor. A tenant is sufficient. It's not the person. It's not a person at the usual residence or place of abode. The tenant is sufficient under this Court's ruling that a person can have more than one residence or more than one place of abode or dwelling. That may be, but what evidence do we have that Ms. Loyal Morales had more than one place of residence? This residence has some level of permanence. She has been the title owner of this property since 2012. She now resides in the property. She represented to the bankruptcy court that she lived in 2016, 17, and 18. Your Honor, based on the record, there is no evidence that she slept in this residence in 2016 when the complaint was served. However, because she owned this property, she was title owner of the property, this is a quiet title matter. This is not a personal injury or breach of contract action. This is an action involving this particular property that service of process was proper under Rule 4, under these unique circumstances. So service of process is a fairly significant issue. It is what we require to have jurisdiction over a person. So the rule allows you to leave the complaint or the papers with an adult, responsible adult, not the individual you're targeting. But that is limited, that it has to be at their residence or place of abode, not that you can leave a complaint or serve an adult, a responsible adult, somewhere else. I mean, somewhere where they don't reside. Why should a rental property be sufficient? Your Honor, again, in this case, she's been the title owner of this property since 2012. If you go on the Clark County Assessor's Report... But what does that matter? I mean, that means that landlords are now required to rely on their tenants to send along this paperwork? Your Honor, not only was this matter served on her long-term tenant, for which she has declared in the record as a great tenant... Does that, again, how does that fall within the rule? How does that make this her residence or her place of abode? That rule... Cases across the country and in the circuit have deemed service of process as a liberal idea, and that the purpose of service is to provide notice. So what you're suggesting is that we go beyond the language of the rule, and we expand the language of the rule, that it's not just service on a responsible adult at your residence or place of abode, it's service on a responsible adult at a property that you own. That you own. Your ownership of that property is a dwelling or place of abode. What if someone owns three properties, and he or she has great tenants in all three places, so you can serve a complaint in any of those three rental properties? Your Honor, yes. It's also the title owner's duty to provide a specific address in the conveyances that are recorded against the property. Here, she did not provide her physical address in the foreclosure deed. In addition, when DITEC... Well, are you suggesting she was evading service, that she... I'm 100% submitting that she's evading service. And here's a... What evidence do you have of that, or I should say, what evidence is in the record of that? Your Honor... And if that were the case, then why didn't the bank attempt service by publication or by mail or some other method of service if they could establish that she was evading service? Well, first, Your Honor, she was provided notice not only through service of process. She was mailed the summons and complaint. She was mailed the three-day notice of intent to take default. She was mailed the default. She was mailed the application to take default judgment. All of which was mailed to... All of which was mailed to the subject property for which she was the title holder. In addition, there are multiple documents recorded against the property, including the Liz pendants that was recorded by DITEC at the time of the complaint in 2016. In addition, DITEC recorded the 2017 judgment against the property. She had, at the very least, constructive notice about this lawsuit since 2016. In addition, and this court heard from the appellant about a bankruptcy. There's a second bankruptcy here. Loyal Morales filed bankruptcy the day before the bank's foreclosure sale in September 2019. If she didn't know about the lawsuit in 2016, she certainly knew or should have known about the lawsuit in 2019 when she blocked our first foreclosure sale. In here, she claims that she had knowledge about the... That she first learned about this lawsuit at the time of the notice of sale. Well, what about the notice of sale two, three years ago? What about the notice of default two, three years ago? I mean, there were so many opportunities for her to come in and challenge the district court's ruling. She waited until two weeks before our second foreclosure sale to take steps to block our foreclosure. Then, after the bank prevailed at the district court level, Loyal Morales files an appeal and then records her own mispendence against the property, effectively prohibiting the bank from proceeding with a third foreclosure sale. The bank has still not been able to foreclose on this property. The last payment made on this loan was in 2009. Ms. Loyal Morales is living mortgage-free at this property. She's not paying taxes. She's not paying utilities. The bank is paying all those. The bank is prejudiced every single day that Loyal Morales attempts to block our sales. Did you file a notice of appeal to the district judge's order denying your emergency motion to set aside the mispendence? No, Your Honor. So, we don't have jurisdiction over that issue? And even if this court doesn't have jurisdiction to rule on that, and this court affirms, the district court would have to, at that point, expunge the mispendence. And frankly, Loyal Morales would have to voluntarily release that mispendence. That mispendence, Your Honor, should at the very least have been stricken from the record. If Loyal Morales is free to record a mispendence against the property on appeal, how is the bank prohibited from challenging the mispendence while on appeal? Courts across the country, including the Nevada Court of Appeals and the Melios decision, have said that mispendence are collateral matters, and that district courts retain jurisdiction to adjudicate a mispendence during an appeal. The same posture here was the same posture in the Melios case, and we would submit that the district court did have jurisdiction to expunge the mispendence and should have. But it doesn't really matter from our perspective because we don't have jurisdiction. There's not much we can do about that. And that's fair, Your Honor. One other point that we know that Loyal Morales is evading service. A sister bank in New York, Mellon Entity, filed a quiet title action against Loyal Morales, served her at the address for which she included in the foreclosure deed, served her, I believe it was her adult son, and she didn't appear. So there's all this evidence. So non-appearance, I'm not sure why that means she's evading service. What it suggests is that your sister bank was able to find her and serve her at her residence, or serve a responsible adult at her residence, which was not where you attempted to serve her in this case. But even so, she didn't appear. But why does that matter? So you're suggesting that, okay, we just decide that it doesn't matter if she was served or not because she wasn't going to appear anyway? Is that the new rule of personal jurisdiction? Your Honor, that's not what we're submitting. We're submitting that she was properly served under Rule 4, and that even if DITECH, the prior loan servicer, should have served her at this Batchelor Button address for which she claimed she lived in 2016, she wouldn't have appeared. And even so, Your Honor, even if she wouldn't have appeared, this sale was void. At the time, it occurred in 2012. It was void in 2016 when DITECH filed the complaint. It was void in 2017 when DITECH received the default judgment. It was void in 2021 when the District Court refused to set aside the default. And, Your Honors, the sale is void today. The sale is void because of the violation of the automatic bankruptcy state. But hadn't the bankruptcy proceedings been terminated, discharged? There was a discharge, and so the state was lifted. The state was lifted as to her, Your Honor. But if you look at the bankruptcy rules, the stay continues until the closure of the case as to the property. And I'll cite to this court 11 U.S.C. 362 C.1 and 11 U.S.C. 362 554. And here, the notice of default was recorded prior to the closure of this bankruptcy. This court, in addition to the Nevada Supreme Court, have all said that you look at the closure, and I can cite to a couple of the decisions. One was Premier 1, another was Court Madera. And in all three, you saw bankruptcy petition, you saw a discharge, then a notice of default, and then a closure. And that's the same fact pattern we have here. We'll refer this court to the supplemental letter submitted to this court on November 29th for a timeline of the three cases and the identical posture of those cases. This bankruptcy argument was not raised when Loyal Morales moved to set aside the judgment. It was only raised in a reply brief. This bankruptcy argument, first of all, the bank should win on the bankruptcy argument. But even if this court considers it, even if this court goes down the road to considering it, it was waived. It was not raised until the reply brief. What is your best evidence in the record that Ms. Loyal Morales had actual notice of the complaint? Because I just, at least speaking for myself, there's no way I think you'd meet the Rule 4 service requirement here. Maybe you could show actual notice. If that happens, perhaps she will have the burden to show that she wasn't properly served and didn't have notice. So what is the best evidence that she had actual notice of this prior to what she claims is she got default judgment notice? The best evidence is the 2019 bankruptcy that was filed the day before the bank scheduled foreclosure sale. At that point of time, she had received a notice of default, a notice of sale. She had a duty to know about this action. Another interesting fact, Your Honor, is the Nevada Supreme Court recently, in the Burbridge decision, ruled that the statute of limitations for quiet title was five years from an affirmative action challenging title. And in here, the bank took that affirmative action in 2016 by its predecessor filing the complaint. It's past October 2021, five years later. Loyal Morales has no meritorious defenses, and she can't even sue for quiet title at this point. And under the St. Paul case, she can't even raise affirmative defenses to our quiet title claim to the extent this court rebans. She has no meritorious defenses to quiet title, even if this court agrees with the appellant that she was not properly served. The district court ruled on the bankruptcy issue, but the district court did not reach three other reasons why the foreclosure sale did not extinguish the bank's deed of trust. And that's excused tender under Crane's bill, or homeowner tender under Crane's bill, excused tender under Perla Trust, and judicial estoppel. Those three reasons provide other reasons for why Loyal Morales does not have a meritorious defense. All of those arguments were raised by the bank down below. They were raised by the bank on appeal. There's record evidence to support all three of those legal issues, and this court could affirm on any of those basis as well. Loyal Morales mentions statute of limitations. The Nevada Supreme Court recently in Thunder Properties ruled that the bank has four years from some affirmative act of some third party to challenge the title. And here, there has never been an affirmative act by Loyal Morales to challenge the bank's rights. And so the bank's quiet title action is timely. Loyal Morales also mentions in her briefing, and then for the first time in her reply brief below, that Section 549 required DITEC to sue for quiet title two years after the bankruptcy. That statute's inapplicable. It only applies to avoidance actions by a bankruptcy trustee, and neither DITEC or Bank of New York Mellon are bankruptcy trustees. All right. So, Mr. Lachman, you're over time now. Thank you, Your Honor. Thank you. Very briefly, you've nailed it. You asked him, when did she have actual notice? And the bank has just conceded the first time that they even assert she had actual notice is after judgment is entered. They don't assert actual notice at the time of service. They don't assert actual notice at any time during the pendency of the case. The bank tells you the first time they even assert she has actual notice is after judgment is entered. And by the way, there's no evidence of that in the record. That's just their assertion and assumption based upon the fact that she filed a bankruptcy. But in the record before you, what the bank is asking you to do is not bend Rule 4. They're asking you to nullify Rule 4, nullify the word dwelling, nullify the concept of somewhere where she sleeps. And, in fact, the bank tells you, we have no evidence she ever slept there, furnished it, had her mail sent there, had anything there. We have no evidence of any of that. Under Rule 4, what they've effectively said is you can serve any property that anybody owns at any time regardless of whether or not they actually dwell there, they actually have ever used it as an abode. It's not merely going beyond the rule. They're nullifying the rule. And it's an important rule because it's jurisdiction. And if you don't have service of process, we stop right there and say we don't go any further. The court doesn't have jurisdiction to consider any of these ancillary issues that ultimately came up because the court doesn't have jurisdiction. And the court in this case never gained jurisdiction. If this court simply applies Rule 60b-4 and looks at the service of process under Rule 4, it'll see there is no evidence that there was ever service upon Ms. Loyal-Morales at her dwelling or usual place of abode. Thank you. All right, thank you. Thank you, counsel, both for your arguments this morning. This case is taken under submission.
judges: BADE, LEE, Cardone